Mary Jo O'Neill, AZ Bar No. 005924
James P. Driscoll-MacEachron, AZ Bar No. 027828
Gina E. Carrillo, AZ Bar No. 030579
**EQUAL EMPLOYMENT OPPORTUNITY**
**COMMISSION, Phoenix District Office**
3300 North Central Ave., Suite 690
Telephone: (602) 640-5012
Fax: (602) 640-5071
Email:  mary.oneill@eeoc.gov
         james.driscoll-maceachron@eeoc.gov
         gina.carrillo@eeoc.gov

Attorneys for Plaintiff
EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Equal Employment Opportunity Commission,<br><br>Plaintiff,<br><br>vs.<br><br>LogistiCare Solutions, LLC and Human Capital Management, Inc. d/b/a HCM Staffing,<br><br>Defendants. | **CIVIL ACTION NO.**<br><br>**COMPLAINT**<br><br>**(JURY TRIAL DEMAND)** |

## **NATURE OF THE ACTION**

This is an action brought under Title VII of the Civil Rights Act of 1964, as amended, the Pregnancy Discrimination Act of 1978, and Title I of the Civil Rights Act of 1991, to correct unlawful employment practices on the basis of sex (pregnancy) and to provide appropriate relief for Charging Party Tiffany Lewis and other aggrieved

-1-

individuals. As alleged with greater particularity in the paragraphs below, Defendants LogistiCare Solutions, LLC and Human Capital Management, Inc. d/b/a HCM Staffing discriminated against Ms. Lewis and other aggrieved individuals by terminating their employment because of their pregnancies.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345.

2. This action is authorized and instituted pursuant to § 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3), and § 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

3. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the District of Arizona.

## PARTIES

4. The Equal Employment Opportunity Commission is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title VII and the PDA. The EEOC is expressly authorized to bring this action by §§ 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3); the PDA, 42 U.S.C. § 2000e(k); and section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

5. At all relevant times, Defendant LogistiCare Solutions, LLC has continuously been a limited liability company doing business within Arizona.

6. At all relevant times, LogistiCare has continuously employed fifteen or more persons.

7. At all relevant times, LogistiCare has been an employer continuously engaged in an industry affecting commerce under §§ 701(b), (g), and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g), and (h).

8. At all relevant times, Defendant Human Capital Management, Inc. d/b/a HCM Staffing has continuously been a corporation which procured employees for covered employers within the meaning of § 701(c) of Title VII, 42 U.S.C. § 2000e(c) and has continuously been doing business within Arizona.

9. At all relevant times, HCM Staffing has continuously employed fifteen or more persons.

10. At all relevant times, HCM Staffing has been an employer and staffing agency continuously engaged in an industry affecting commerce under §§ 701(b), (g), and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g), and (h).

11. At all relevant times, LogistiCare and HCM Staffing operated as joint employers with regard to the individuals placed as Customer Service Representatives by HCM Staffing at LogistiCare.

12. Upon information and belief, at all relevant times, both LogistiCare and HCM Staffing controlled the terms and conditions of the Customer Service Representatives placed by HCM Staffing at LogistiCare, including, without limitation:

    a. HCM Staffing placed temporary employees with LogistiCare;

b. LogistiCare and HCM Staffing had control over who would be placed with LogistiCare as a temporary employee through prescreens and interviews;

c. LogistiCare and HCM Staffing had control over determining the necessary qualifications for a Customer Service Representative with LogistiCare prior to placement;

d. LogistiCare training classes took place at LogistiCare's place of business;

e. LogistiCare provided all instrumentalities and tools to temporary employees working at LogistiCare;

f. LogistiCare supervisors and HCM Staffing supervisors were present at LogistiCare's site during training classes;

g. LogistiCare trained new employees in training classes, and HCM Staffing supervisors were present to oversee the HCM Staffing employees during the training;

h. LogistiCare set the training and job duties for the temporary employees from HCM Staffing;

i. LogistiCare gave work assignments to the temporary employees and determined the tasks they would do;

j. LogistiCare controlled when temporary employees would work and whether to hire the temporary employees as full-time employees of LogistiCare;

    k. LogistiCare had control over the attendance required of the temporary employees;

    l. If a temporary employee was going to be absent from work, she needed to call both LogistiCare and HCM Staffing prior to the start of a shift; and

    m. HCM Staffing controlled the paychecks and method of payment; HCM Staffing also processed timesheets of LogistiCare temporary employees.

13. All of the acts and failures to act alleged herein are attributable to both LogistiCare and HCM Staffing.

## ADMINISTRATIVE PROCEDURES

14. More than thirty days prior to the institution of this lawsuit, Tiffany Lewis filed a charge of discrimination alleging violations of Title VII by LogistiCare and a charge of discrimination alleging violations of Title VII by HCM Staffing.

15. The Commission provided LogistiCare and HCM Staffing with notices of the charges of discrimination.

16. On August 26, 2019, the Commission issued to LogistiCare and HCM Staffing Letters of Determination finding reasonable cause to believe that LogistiCare and HCM Staffing violated Title VII and the PDA and inviting LogistiCare and HCM Staffing to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

17. The Commission provided LogistiCare and HCM Staffing an opportunity to remedy the discriminatory practices described in the Letters of Determination.

18. The Commission was unable to secure a conciliation agreement acceptable to the Commission from either LogistiCare or HCM Staffing.

19. On January 29, 2020, the Commission issued a Notice of Failure of Conciliation to LogistiCare and HCM Staffing.

20. All conditions precedent to the institution of this lawsuit have been fulfilled.

## **STATEMENT OF CLAIMS**

21. Since at least 2013, LogistiCare and HCM Staffing have engaged in unlawful employment practices based on sex (pregnancy) in violation of §§ 701(k) and 703(a)(1) of Title VII, 42 U.S.C. §§ 2000e(k) and 2000e-2(a)(1) by terminating Tiffany Lewis and other aggrieved individuals because of their sex (pregnancy).

22. HCM Staffing operates a staffing company that places individuals as temporary employees with client companies, including call centers.

23. HCM Staffing hires employees to place with client companies.

24. HCM Staffing interviews the individuals it hires and determines which client they should be placed with.

25. Any individual HCM Staffing places with a client is an employee of HCM Staffing and a temporary employee of the client company.

26. During the relevant time period, LogistiCare was a client of HCM Staffing.

27. LogistiCare is a non-emergency transportation brokerage company that operates 24-hour call centers.

28. LogistiCare has a call center in Phoenix, Arizona.

29. During the relevant time period, HCM Staffing placed Customer Service Representatives with LogistiCare.

30. During the relevant time period, LogistiCare provided a two-week training class for temporary employees before putting them to work.

31. During the relevant time period, LogistiCare interviewed the individuals that HCM Staffing provided before the individuals started the training class with LogistiCare.

32. During the relevant time period, HCM Staffing supervisors were present at the LogistiCare site during the training classes to monitor the temporary employees and ensure that LogistiCare's needs were being met.

33. During the relevant time period, LogistiCare repeatedly terminated female temporary employees because of their sex (pregnancy).

34. HCM Staffing knew of LogistiCare's discriminatory acts and failed to take corrective action within its control in violation of Title VII.

35. During the relevant time period, HCM Staffing allowed LogistiCare to remove female employees because of their sex (pregnancy) and HCM Staffing replaced these employees with non-pregnant temporary workers for LogistiCare.

36. Tiffany Lewis applied to HCM Staffing on June 6, 2013.

37. HCM Staffing hired Ms. Lewis.

38. HCM Staffing referred Ms. Lewis to LogistiCare as a Customer Service Representative.

39. HCM Staffing interviewed Ms. Lewis for the position of Customer Service Representative position.

40. LogistiCare interviewed Ms. Lewis for the position of Customer Service Representative.

41. Ms. Lewis began working for LogistiCare on September 11, 2013.

42. Ms. Lewis began LogistiCare's two-week training class for temporary employees.

43. Ms. Lewis was visibly pregnant when she began working for LogistiCare.

44. LogistiCare employees and HCM Staffing employees knew Ms. Lewis was pregnant on or shortly after the day she began the two-week training class at LogistiCare.

45. Elizabeth Peralta applied to HCM Staffing on August 16, 2013.

46. HCM Staffing hired Ms. Peralta.

47. HCM Staffing referred Ms. Peralta to LogistiCare as a Customer Service Representative.

48. HCM Staffing interviewed Ms. Peralta for the position of Customer Service Representative.

49. LogistiCare interviewed Ms. Peralta for the position of Customer Service Representative.

50. Ms. Peralta began working for LogistiCare on September 11, 2013.

51. Ms. Peralta began LogistiCare's two-week training class for temporary employees.

52. Ms. Peralta was visibly pregnant when she began working for LogistiCare.

53. LogistiCare employees and HCM Staffing employees knew Ms. Peralta was pregnant on or shortly after the day she began the two-week training class at LogistiCare.

54. Ryan Gauvin, LogistiCare Training Supervisor, ran the training class that Ms. Lewis and Ms. Peralta attended. Kimberly Vasquez, LogistiCare Quality Lead and Trainer, was also present for the class.

55. Mark Hanley, LogistiCare Call Center Manager, was Ryan Gauvin's supervisor.

56. Lydia Marcilones, the HCM Staffing Lead Recruiter for LogistiCare, was also onsite at LogistiCare for the training class Ms. Lewis and Ms. Peralta attended.

57. Ms. Lewis attended the LogistiCare training class from September 11, 2013 through September 16, 2013 with no performance or attendance issues.

58. Ms. Peralta attended the LogistiCare training class from September 11, 2013 through September 16, 2013 with no performance or attendance issues.

59. Ms. Lewis was approximately 7 months pregnant in September 2013.

60. Ms. Peralta was approximately 7 months pregnant in September 2013.

61. During the training class, Ms. Peralta told Ms. Vasquez that she was pregnant.

62. LogistiCare released Ms. Lewis and Ms. Peralta from the training class on September 16, 2013.

63. On September 16, 2013, Ms. Lewis received a phone call from Jorge Ontiveros, a recruiter from HCM Staffing for LogistiCare.

64. Mr. Ontiveros told Ms. Lewis that her assignment with LogistiCare was ending due to LogistiCare's low call volume.

65. On September 17, 2013, Ms. Lewis called Mr. Ontiveros to get a better understanding as to why she was not working at LogistiCare.

66. Mr. Ontiveros told Ms. Lewis that Ms. Lewis, Ms. Peralta, and another woman were the only ones let go from that LogistiCare training class.

67. Ms. Lewis told Mr. Ontiveros that she did not understand why HCM Staffing said they were let go because of LogistiCare's low call volume when she knew another LogistiCare training class would be starting in a couple of weeks.

68. Ms. Lewis emailed Mr. Ontiveros on September 19, 2013.

69. Mr. Ontiveros replied on September 20, 2013, stating that the manager he spoke to at LogistiCare would not hire her back. Mr. Ontiveros offered no further explanation or assistance to Ms. Lewis on the issue.

70. Ms. Lewis received no further clarification from HCM Staffing or LogistiCare about the reason for her termination.

71. Later, a Customer Service Representative at LogistiCare told Ms. Lewis that she had heard another LogistiCare employee reading aloud from Ryan Gauvin's computer. The Customer Service Representative told Ms. Lewis that the employee read aloud that LogistiCare terminated Ms. Lewis and Ms. Peralta because of their pregnancies.

72. Ms. Lewis believes that she would have been able to comply with LogistiCare's attendance policy.

73. Ms. Peralta received a phone call from someone at HCM Staffing informing her that she would no longer be working at LogistiCare.

74. Ms. Peralta told the person she spoke to at HCM Staffing that she thought she was being terminated because she was pregnant.

75. Ms. Peralta also told Mr. Ontiveros from HCM Staffing that she believed she was terminated because she was pregnant.

76. Ms. Peralta received no further clarification or information from HCM Staffing or LogistiCare about the reason for her termination.

77. After LogistiCare terminated Ms. Lewis and Ms. Peralta, Lydia Marcilones of HCM Staffing met with Ryan Gauvin of LogistiCare.

78. Mr. Gauvin told Ms. Marcilones that Ms. Lewis and Ms. Peralta were released because they would not be able to comply with LogistiCare's attendance policy because they were pregnant.

79. Mr. Gauvin said that he had direct orders from Mark Hanley, the LogistiCare Call Center Manager, to release Ms. Lewis and Ms. Peralta because they were pregnant.

80. Ms. Marcilones met with Mr. Hanley in September 2013.

81. Mr. Hanley told Ms. Marcilones that he had direct orders from LogistiCare's Human Resources department to terminate Ms. Lewis and Ms. Peralta because they were pregnant and that there was nothing that Ms. Marcilones could do about it.

82. Ms. Marcilones did not take appropriate corrective action against LogistiCare for Ms. Lewis and Ms. Peralta's terminations.

83. Mr. Hanley also told Sean Kosla, HCM Staffing's Area Manager, that he had direct orders from LogistiCare's Human Resources department to terminate Ms. Lewis and Ms. Peralta because of their pregnancies.

84. Mr. Kosla did not take appropriate corrective action against LogistiCare for Ms. Lewis and Ms. Peralta's terminations.

85. HCM Staffing did not insist on an investigation into LogistiCare's discriminatory termination of Ms. Lewis and Ms. Peralta.

86. HCM Staffing did not take corrective action based on LogistiCare's discriminatory termination of Ms. Lewis and Ms. Peralta.

87. HCM Staffing did not affirm its commitment to prevent discrimination to Ms. Lewis or Ms. Peralta after their release from LogistiCare.

88. HCM Staffing accepted LogistiCare's decision to terminate Ms. Lewis and Ms. Peralta.

89. HCM Staffing processed the terminations of Ms. Lewis and Ms. Peralta for LogistiCare.

90. HCM Staffing continued to send employees to work at LogistiCare.

91. LogistiCare and HCM Staffing replaced Ms. Lewis and Ms. Peralta with non-pregnant employees.

# STATEMENT OF CLAIMS

## Count I:
## Termination Based on Sex (Pregnancy)
## 42 U.S.C. § 2000e-2(a)

92. The allegations in the foregoing paragraphs are incorporated by reference.

93. Since at least September 2013, Defendants have engaged in unlawful employment practices in violation of § 703(a) of Title VII, 42 U.S.C. § 2000e-2(a), by terminating Tiffany Lewis and other aggrieved individuals because they were pregnant.

94. At all relevant times, LogistiCare employed Ms. Lewis and other aggrieved individuals as Customer Service Representatives.

95. At all relevant times, Ms. Lewis and other aggrieved individuals were pregnant when they worked as Customer Service Representatives for LogistiCare.

96. At all relevant times, Ms. Lewis and other aggrieved individuals were qualified to perform the duties of a Customer Service Representative at LogistiCare.

97. LogistiCare terminated Ms. Lewis and other aggrieved individuals because they were pregnant.

98. After LogistiCare terminated Ms. Lewis and other aggrieved individuals, LogistiCare continued to hire additional Customer Service Representatives.

99. At all relevant times, HCM Staffing employed Ms. Lewis and other aggrieved individuals.

100. At all relevant times, Ms. Lewis and other aggrieved individuals were pregnant when they worked for LogistiCare through HCM Staffing.

101. At all relevant times, Ms. Lewis and other aggrieved individuals were qualified to perform the duties of a Customer Service Representative when HCM Staffing placed them at LogistiCare.

102. HCM Staffing knew that LogistiCare terminated Ms. Lewis and other aggrieved individuals because of their pregnancies.

103. HCM Staffing did not take appropriate corrective action against LogistiCare for terminating Ms. Lewis and other aggrieved individuals because they were pregnant.

104. The effect of the practices complained of in the foregoing paragraphs has been to deprive Tiffany Lewis and other aggrieved individuals of equal employment opportunities and otherwise adversely affected their status as employees because of their sex, female, and their pregnancies.

105. The unlawful employment practices complained of in the foregoing paragraphs were intentional.

106. The unlawful employment practices complained of in the foregoing paragraphs were done with malice or with reckless indifference to the federally protected rights of Tiffany Lewis and other aggrieved individuals.

## **PRAYER FOR RELIEF**

Wherefore, the Commission respectfully prays that this Court:

A. Grant a permanent injunction enjoining LogistiCare, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it from engaging in any employment practice that discriminates on the basis of sex and

pregnancy.

B. Grant a permanent injunction enjoining HCM Staffing, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it from engaging in any employment practice that discriminates on the basis of sex and pregnancy.

C. Order LogistiCare to institute and carry out policies, practices, and programs that provide equal employment opportunities for all persons regardless of sex and eradicate the effects of its past and present unlawful employment practices.

D. Order HCM Staffing to institute and carry out policies, practices, and programs that provide equal employment opportunities for all persons regardless of sex and eradicate the effects of its past and present unlawful employment practices.

E. Order LogistiCare to make Tiffany Lewis and other aggrieved individuals whole by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices.

F. Order HCM Staffing to make Tiffany Lewis and other aggrieved individuals whole by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices.

G. Order LogistiCare to make Tiffany Lewis and other aggrieved individuals whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, in amounts to be determined at trial.

H.  Order HCM Staffing to make Tiffany Lewis and other aggrieved individuals whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, in amounts to be determined at trial.

I.  Order LogistiCare to make Tiffany Lewis and other aggrieved individuals whole by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of above, in amounts to be determined at trial.

J.  Order HCM Staffing to make Tiffany Lewis and other aggrieved individuals whole by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of above, in amounts to be determined at trial.

K.  Order LogistiCare to pay Tiffany Lewis and other aggrieved individuals punitive damages for its intentional, malicious, and reckless conduct, as described above, in amounts to be determined at trial.

L.  Order HCM Staffing to pay Tiffany Lewis and other aggrieved individuals punitive damages for its intentional, malicious, and reckless conduct, as described above, in amounts to be determined at trial.

M.  Grant to the Commission such further relief as the Court deems necessary and proper in the public interest.

N.  Award the Commission its taxable and recoverable costs of this action.

# **JURY TRIAL DEMAND**

The Commission requests a jury trial on all questions of fact raised by its complaint.

RESPECTFULLY SUBMITTED this 1st day of May, 2020

          SHARON FAST GUSTAFSON
          General Counsel

          GWENDOLYN YOUNG REAMS
          Associate General Counsel

          EQUAL EMPLOYMENT
          OPPORTUNITY COMMISSION
          131 M Street NE, 5th Floor
          Washington, DC 20507-0004

          MARY JO O'NEILL
          Regional Attorney

          JAMES DRISCOLL-MACEACHRON
          Supervising Trial Attorney

          */s/ Gina E. Carrillo*
          GINA E. CARRILLO
          Trial Attorney

          EQUAL EMPLOYMENT
          OPPORTUNITY COMMISSION
          Phoenix District Office
          3300 North Central Avenue, Suite 690
          Phoenix, Arizona
          85012