Todd S. Aidman, *pro hac vice*, Florida Bar No. 173029
Marilyn G. Moran, *pro hac vice*, Florida Bar No. 0163813
**FORDHARRISON LLP**
300 South Orange Avenue, Suite 1300
Orlando, FL 32801
Telephone: 407-418-2300
Fax: 407-418-2327
Email: taidman@fordharrison.com
mmoran@fordharrison.com

Attorneys for Defendant
LOGISTICARE SOLUTIONS, LLC

# IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Equal Employment Opportunity Commission,<br><br>Plaintiff,<br><br>v.<br><br>LogistiCare Solutions, LLC and Human Capital Management, Inc. d/b/a HCM Staffing,<br><br>Defendants. | Case No. 2:20-cv-00852-GMS<br><br>**DEFENDANT LOGISTICARE SOLUTIONS, LLC'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT ON THE ISSUE OF LACHES** |

COMES NOW Defendant, LogistiCare Solutions, LLC ("LogistiCare"), and submits this memorandum in support of its motion to dismiss or, in the alternative, motion for summary judgment on the issue of laches, pursuant to Rules 12(b)(6) and 56(c) of the Federal Rules of Civil Procedure.

## INTRODUCTION

The EEOC waited nearly seven years to file this lawsuit which arises out of a single charge of discrimination filed by a temporary employee named Tiffany Lewis on

October 31, 2013. Without any reasonable or justifiable basis, the EEOC waited nearly seven years, until May 1, 2020, to file suit. The EEOC's inexcusable delay in bringing this action is fatal under the doctrine of laches.

The EEOC's delay has prejudiced LogistiCare's right to mount a defense against the allegations asserted in multiple ways. Many of the witnesses and key players with knowledge of this matter no longer work for the company and may well be outside of the Court's jurisdiction. And even those witnesses who *are* still employed at LogistiCare now have little to no independent recollection of the relevant facts because the situation at issue—involving a single temporary employee who attended a training class at LogistiCare for less than a week—occurred so long ago. In addition, the EEOC's unreasonable delay in bringing suit has caused Ms. Lewis's alleged back pay damages (and therefore the company's purported liability and exposure) to balloon exponentially above and beyond any amount Ms. Lewis would have been able to recover if this case were brought in a timely manner.

The EEOC's failure to investigate and prosecute this action is inequitable and improper. Indeed, it is well-settled in the Ninth Circuit and across federal courts that delays of even shorter durations are unjust and subject to dismissal under the doctrine of laches where prejudice is shown. Therefore, this Court should dismiss this action with prejudice pursuant to Rule 12(b)(6) under the doctrine of laches. Alternatively, if the Court determines that it must consider matters outside of the pleadings to rule on this motion, LogistiCare asks the Court to convert this motion into a motion for summary judgment pursuant to Rule 56(c) and render judgment for LogistiCare accordingly.

**FACTS**

1. On October 31, 2013, Tiffany Lewis filed a charge of pregnancy discrimination with the EEOC. (Compl. ¶ 14; LogistiCare Attachment B). Lewis, an employee of Defendant HCM Staffing ("HCM"), had participated in LogistiCare's customer service training program for less than one week before her assignment was terminated on September 16, 2013. (Compl. ¶ 57). Lewis's assignment ended pursuant to company policy because she could not comply with the relevant attendance requirements applicable to all employees. In her EEOC charge, Lewis alleged that she was terminated because of her pregnancy. (Compl. ¶ 14).

2. After receiving notice of Ms. Lewis's charge, LogistiCare requested mediation, but the EEOC rejected the request without explanation. Consequently, LogistiCare promptly submitted its Statement of Position in response to the charge more than six years ago on January 23, 2014. (LogistiCare Attachment A, Emory Decl. ¶ 4).

3. The EEOC issued a Request for Additional Information on July 22, 2014, seeking certain documents and the opportunity to interview Kimberly Vasquez, Quality Lead/Trainer in the Phoenix Call Center, Ryan Gauvin, former Training Supervisor in the Phoenix Call Center, and Mark Hanley, former Phoenix Call Center Manager. (Emory Decl. ¶ 5).

4. LogistiCare agreed to produce the requested documents, and LogistiCare promptly produced Mr. Gauvin and Mr. Hanley for interviews with the EEOC investigator on August 14, 2014, mere weeks after the EEOC's Request. (Emory Decl. ¶ 6).

5.   Despite LogistiCare's expeditious production of documents and witnesses, the EEOC waited a full year, until August 2015, to take additional steps in its purported investigation. And even then, rather than pursue information related to Ms. Lewis's allegations, the EEOC notified LogistiCare that it intended to expand the investigation into a nationwide investigation into alleged ***disability discrimination***, which was outside the scope of Ms. Lewis's individual charge of sex/pregnancy discrimination. At the same time, the EEOC issued another Request for Information seeking personnel information of LogistiCare's employees nationwide. (Emory Decl. ¶ 7).

6.   Three years and nine months later, on May 22, 2019, the EEOC served LogistiCare with Subpoena No. PHX-19-10 seeking, among other documents, Mr. Hanley's emails and notes relating to Ms. Lewis. (Emory Decl. ¶ 8). The EEOC had never made a request for those documents previously, even though it could have easily obtained them from LogistiCare in its original July 22, 2014 Request for Additional Information or from Mr. Hanley himself when the EEOC investigator interviewed him on August 14, 2014, nearly five years before the EEOC issued the subpoena. Indeed, the EEOC could, and arguably should, have sought such documents at any point since October 31, 2013 (then nearly six years prior) when Ms. Lewis first filed her charge of discrimination with the EEOC.

7.   On May 1, 2020, the EEOC filed this lawsuit against LogistiCare and HCM based on Ms. Lewis's 2013 charge of discrimination. (Compl. ¶ 14).

8.   The EEOC's Complaint alleges that LogistiCare is liable to Ms. Lewis and potentially other, unnamed individuals for back pay with prejudgment interest because of

the alleged employment action taken nearly seven years ago in September 2013. (Compl. ¶ 14; Prayer for Relief at 15 ¶¶ E-F).

9. LogistiCare does not maintain personnel records for individuals who have been assigned to work at LogistiCare by HCM once the temporary assignment has ended. Thus, the company would be forced to rely largely on the personal recollection of managers and human resources personnel for evidence of their interactions with individuals who did not successfully complete LogistiCare's customer service training program and become hired by LogistiCare (both for Lewis specifically and potentially nationwide for other allegedly "aggrieved" individuals). (Emory Decl. ¶ 9).

10. Multiple key managers and human resources personnel who were involved in the placement and/or termination of Ms. Lewis's assignment with LogistiCare, or who participated in the EEOC's investigation or the company's response to Ms. Lewis's charge of discrimination, have not been employed by LogistiCare for a number of years. (Emory Decl. ¶ 10).

For instance, Mark Hanley is identified in the Complaint as the Call Center Manager of LogistiCare's Call Center in Phoenix during the 2013 to 2014 time frame. (Compl. ¶ 55). His employment with LogistiCare ended more than six years ago on May 22, 2014. (Emory Decl. ¶ 11). LogistiCare has no reasonable way of determining Mr. Hanley's whereabouts more than six years after his employment ended. (*Id.*).

11. Christine Armijo was the Call Center Manager at LogistiCare's Phoenix Call Center during the 2013 to 2014 time frame. Her employment with LogistiCare ended over three years ago on March 18, 2017. (Emory Decl. ¶ 13). LogistiCare has no

reasonable way of determining Ms. Armijo's whereabouts more than three years after her employment ended. (*Id.*).

12. Samantha Garcia was the General Manager of LogistiCare's Phoenix Call Center during the 2013 to 2014 time frame. Her employment with LogistiCare ended over six years ago on March 24, 2014. (Emory Decl. ¶ 12). LogistiCare has no reasonable way of determining Ms. Garcia's whereabouts more than six years after her employment ended. (*Id.*).

13. Jenny Southern was the Vice President of Human Resources at LogistiCare's office in Atlanta during the 2013 to 2014 time frame. Her employment with LogistiCare ended on May 22, 2020. (Emory Decl. ¶ 14).

14. Natasha Lindsay was the Regional Human Resources Manager at LogistiCare's Phoenix Call Center during the 2013 to 2014 time frame. Her employment with LogistiCare ended on May 21, 2020. (Emory Decl. ¶ 15).

15. Ryan Gauvin is currently employed by LogistiCare as Regional Director of Operations Training in San Diego, California. Previously, when Mr. Gauvin worked as the Training Supervisor at LogistiCare's Phoenix Call Center, he was responsible for running the training class attended by Ms. Lewis and Ms. Peralta, as described in the Complaint. (Emory Decl. ¶ 16; Compl. ¶ 54). Unfortunately, however, Mr. Gauvin has little to no independent recollection of Ms. Lewis and Ms. Peralta, or the circumstances that led to the termination of their assignment. (Emory Decl. ¶ 16).

16. In its Complaint, the EEOC alleges that there may be other individuals, in addition to Ms. Lewis and Ms. Peralta, who may have been subjected to alleged

discriminatory practices in or around the 2013 time frame. (Compl. ¶ 104). To the extent such other individuals exist, at this point, it is unlikely that the witnesses who were privy to such other individuals' experiences at LogistiCare would be able to recall events that transpired more than six years ago, even if the witnesses were still employed by LogistiCare after all this time. (Emory Decl. ¶ 17).

**ARGUMENT**

I.  THE EEOC'S CLAIM IS BARRED BY THE DOCTRINE OF LACHES.

"Laches is an equitable doctrine designed to prevent unfairness to a defendant due to a plaintiff's delay in filing suit in the absence of an appropriate statute of limitations." *EEOC v. Dresser Industries, Inc.*, 668 F.2d 1199, 1201 (11th Cir. 1982). "Essentially the equitable substitute for a statute of limitations, laches serves to protect defendants from prejudice caused by stale evidence, prolonged uncertainty about legal rights and status, and unlimited exposure to liability damages." *Smith v. Caterpillar, Inc.*, 338 F.3d 730, 733 (7th Cir. 2003). Thus, although the EEOC is not bound by an express statute of limitations in filing a Title VII lawsuit, district courts possess the discretionary power to provide appropriate equitable relief to a defendant who has been prejudiced by the EEOC's unreasonable conduct. *See Occidental Life Ins. Co. v. EEOC*, 432 U.S. 355, 373 (1977) (recognizing that when a Title VII defendant is prejudiced by the EEOC's lack of diligence, the trial court may provide the necessarily relief, including dismissing the lawsuit, or restricting or even denying back pay relief).

To prove the defense of laches, a defendant must establish (1) a lack of diligence by the plaintiff; and (2) prejudice to the defendant as a result. *Dresser Industries*, 668

F.2d at 1202. In this analysis, the "trial court enjoys considerable discretion in deciding whether to apply the equitable doctrine of laches." *Smith*, 338 F.3d at 733.[1]

### A. The EEOC's Six and a Half Year Delay in Bringing Suit Was Unreasonable and Inexcusable.

"[T]he decision to apply the doctrine of laches lies on a sliding scale: the longer the plaintiff delays in filing [its] claim, the less prejudice the defendant must show in order to defend on laches." *Id.* at 734. Generally, waiting more than four years from the date a charge of discrimination is filed to bring suit under Title VII has been determined to be unreasonable by a majority of federal courts considering the issue. *See, e.g., EEOC v. Dresser Industries*, 668 F.2d 1199, 1202-1203 (11th Cir. 1982) (five year, eight month delay "intolerable"); *EEOC v. Alioto Fish Co.*, 623 F.2d 86, 88 (9th Cir. 1980) (five years, two month delay unreasonable); *EEOC v. Massey-Ferguson, Inc.*, 622 F.2d 271, 277-78 (7th Cir. 1980) (four year, nine month delay unreasonable); *EEOC v. Liberty Loan Corp.*, 584 F.2d 853, 857 (8th Cir. 1978) (four year, four month delay unreasonable); *EEOC v. Bray Lumber Co.*, 478 F. Supp. 993, 997 (M.D. Ga. 1979) (four year, five month delay unreasonable); *EEOC v. Firestone Tire & Rubber Co.*, 626 F. Supp. 90, 92-93 (M.D. Ga. 1985) (five year delay unreasonable). Moreover, courts have

---

[1] Here, the Court may determine (correctly) that both elements are met and dismiss the case under Rule 12(b)(6) on the face of the EEOC's complaint. As detailed below: (i) the first element is established based solely on the dates the complaint and Lewis's underlying charge (LogistiCare Attachment B), a document expressly incorporated into the complaint, were filed; and (ii) the second element is established by the presumption of prejudice for such a lengthy delay and by the Court's ability to take judicial notice of the fact that witness's memories fade over time (*see infra* at 10-11). However, should the Court wish to consider other evidence LogistiCare submits in support of this motion, LogistiCare respectfully requests that the Court convert and rule on the motion under Rule 56(c).

routinely rejected the EEOC's argument that a heavy workload or backlog of cases provides a reasonable excuse for such a lengthy delay. *See, e.g., Dresser Industries*, 668 F.2d at 1203; *Alioto* 623 F.2d at 88.

Here, the EEOC's delay is even longer than the delays that were found unreasonable in the cases cited above. The EEOC received the underlying charge on October 31, 2013 and did not file suit until May 1, 2020 -- six and a half years after the charge of discrimination was filed -- demonstrating a totally unwarranted delay in bringing this lawsuit. It is clear by the agency's actions (and lack thereof) during its multi-year "investigation" that it simply dropped the ball and did nothing to pursue the case for years. Despite LogistiCare's prompt responses to the EEOC's requests for documents, information, and witnesses, the EEOC routinely waited years before taking additional steps in its investigation. The fact that the EEOC waited until May of 2019 to even ask for Mr. Hanley's notes and emails regarding Ms. Lewis, even though the EEOC had previously requested documents from LogistiCare and interviewed Mr. Hanley himself about Ms. Lewis's allegations nearly five years earlier in 2014, is a particularly glaring example of the EEOC's stalling.

In the Complaint, the EEOC alleges that it issued a "Notice of Failure of Conciliation" to LogistiCare on January 29, 2020. (Compl. ¶ 19). Tellingly, however, the EEOC says nothing about why it waited so many years to bring suit. Nor can there be a legitimate justification for such delay, when the Complaint does not contain any new allegations or identify any "aggrieved individuals" other than those already known and investigated by the EEOC back in August 2014. Worse, the EEOC's Complaint attempts

to conceal the agency's misfeasance altogether by entirely omitting the date that Ms. Lewis filed her underlying EEOC charge. (*See* Compl. ¶ 14).

As shown above, the EEOC's delay in filing this lawsuit well exceeds the delays which have been found unreasonable by district and appellate courts under the doctrine of laches. Therefore, Defendant has established the first prong of its laches defense.

        B.        <u>LogistiCare Has Suffered Prejudice Due to the EEOC's Unreasonable Delay in Bringing This Action.</u>

Because the EEOC waited so long to file this lawsuit, LogistiCare is not required to meet a high threshold of proof to show that it suffered prejudice sufficient to establish the defense of laches. *See White v. Daniel*, 909 F.2d 99, 102 (4th Cir. 1990) ("Clearly the greater the delay, the less the prejudice required to show laches, and vice versa."); *see also Smith v. Caterpillar*, 338 F.3d at 734 ("[T]he longer the plaintiff delays in filing [its] claim, the less prejudice the defendant must show in order to defend on laches."); *Jeffries v. Chicago Transit Auth.*, 770 F.2d 676, 680 (7th Cir. 1985) ("The longer the delay, the less prejudice defendant must establish."). Thus, given the EEOC's more than six year delay in bringing this action, LogistiCare "need not present a mountain of evidence establishing prejudice in order to succeed on its laches defense." *Smith*, 338 F.3d at 734.

LogistiCare can establish the element of prejudice in several ways. For example, the classic elements of undue prejudice in this situation include unavailability of witnesses and changed personnel. *See EEOC v. Liberty Loan*, 584 F.2d at 858. In determining whether the element of prejudice has been met, courts have taken judicial notice that witnesses' memories inevitably dim with the passage of time. *See, e.g.,*

*Alioto*, 623 F.2d at 89.  In fact, a long delay in bringing suit can raise a presumption of prejudice.  *See Boone v. Mechanical Specialties Co.*, 609 F.2d 956, 958 (9th Cir. 1979) (affirming dismissal of action on laches defense where lawsuit was filed seven years after the underlying EEOC charge and holding that a presumption of actual prejudice may arise where there is an especially long delay in bringing suit).  Additionally, courts have recognized that an unfair enlargement of potential back pay liability further demonstrates material prejudice sufficient to establish the defense of laches.  *See, e.g., Alioto*, 623 F.2d at 89; *Firestone Tire*, 626 F. Supp. at 93.

Turning to the facts of this case, there is no reasonable basis to argue that LogistiCare has not been severely and unfairly prejudiced by the EEOC's excessive six year delay in bringing this lawsuit.  The majority of witnesses with knowledge of the allegations in the Complaint no longer work for LogistiCare, and several left LogistiCare many years ago.  Specifically, Mark Hanley, who is identified in the Complaint as LogistiCare's Call Center Manager during the relevant timeframe, and would have been a key player in the status of Ms. Lewis's placement with the company, left LogistiCare's employ over six years ago.  (Compl. ¶ 55; Emory Decl. ¶ 11).  Similarly, numerous other witnesses with purported knowledge of this action no longer work for LogistiCare.  Christine Armijo was the Call Center Manager at LogistiCare's Phoenix Call Center during the 2013 to 2014 time frame.  Her employment with LogistiCare ended over three years ago on March 18, 2017.  (Emory Decl. ¶ 13).  Samantha Garcia was the General Manager of LogistiCare's Phoenix Call Center during the 2013 to 2014 time frame.  Her employment with LogistiCare ended over six years ago on March 24, 2014.  (*Id.* ¶ 12).

Jenny Southern was the Vice President of Human Resources at LogistiCare's office in Atlanta during the 2013 to 2014 time frame. Her employment with LogistiCare ended on May 22, 2020. (*Id.* ¶ 14). Natasha Lindsay was the Regional Human Resources Manager for LogistiCare's Phoenix Call Center during the 2013 to 2014 time frame. Her employment with LogistiCare ended on May 21, 2020. (*Id.* ¶ 15). LogistiCare should not be required to face the hardship of locating former employees and trying to procure their testimony about allegations known to the EEOC for nearly seven years. Even if the company were to undertake that expense and were able to successfully locate the former employees, those individuals may well live outside of the Court's jurisdiction, raising significant impediments to LogistiCare's ability to call the witnesses in support of its defense. Further, even if all of the above concerns were somehow resolved, the fact remains that the witnesses' independent recollections of Ms. Lewis and the dispute at hand will inevitably have faded over the last six years, further prejudicing LogistiCare's defense.

The Complaint also identifies Ryan Gauvin as a material witness. Mr. Gauvin was the Training Supervisor who ran the training class that Ms. Lewis and Ms. Peralta attended back in 2013. (Compl. ¶ 54; Emory Decl. ¶ 16). Although Mr. Gauvin still works for the company in a different position and different location, his memories of this matter have inevitably faded over the last six years, such that he has no independent recollection of Ms. Lewis, Ms. Peralta, or the facts alleged in the Complaint. (Emory Decl. ¶ 16). Moreover, Ms. Lewis's potential back pay award has increased every day

over the last six years that the EEOC waited to bring this case, causing LogistiCare's exposure to liability for back pay to grow exponentially as a result.

Due to its baffling failure to conduct its investigation in a timely manner, the EEOC has inexcusably transformed this simple matter -- involving a temporary employee who attended a training class at LogistiCare *for less than one week in September 2013* -- into a nearly seven-year saga that has only now entered the protracted litigation process in the middle of 2020. In so doing, the EEOC has prejudiced LogistiCare's ability to marshal the witnesses and evidence necessary to defend against the EEOC's claim and has exposed the company to exorbitant back pay damages, which are now four or five times what they would have been had the EEOC exercised reasonable diligence. Under these facts, Defendant has satisfied its minimal burden of establishing the element of prejudice, and this Court should dismiss this action with prejudice based on the doctrine of laches.

## CONCLUSION

For the foregoing reasons, this Court should grant this Motion and dismiss the Complaint with prejudice in its entirety pursuant to Rule 12(b)(6) or Rule 56(c).

Dated this 6th day of July, 2020.

FORD & HARRISON LLP

By:/s/ Marilyn G. Moran
    Marilyn G. Moran

    Attorney for Defendant
    LogistiCare Solutions, LLC

-13-

## **LOCAL RULE 12.1(C) CERTIFICATION**

I HEREBY CERTIFY that before filing this Motion to Dismiss or, in the Alternative, Motion for Summary Judgment counsel for LogistiCare notified counsel for the EEOC of the issues asserted in this motion and met and conferred regarding them. The parties were unable to agree that the pleading was curable in any part by a permissible amendment offered by the pleading party.

/s/ Marilyn G. Moran
Marilyn G. Moran

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on July 6, 2020, I electronically filed the foregoing using the CM/ECF system, which will send a notice of electronic filing to: Gina Erin Carrillo at Gina.Carrillo@eeoc.gov, James P. Driscol-MacEachron at James.Driscoll-Maceachron@eeoc.gov, Mary Joleen O'Neill at Mary.Oneill@eeoc.gov, Benjamin C. Price at Benjamin.Price@eeoc.gov and Michael Morris Baskind at Michael.Baskind@eeoc.gov, Equal Employment Opportunity Commission – Phoenix, AZ, 3300 N. Central Avenue, Suite 690, Phoenix, AZ 85012-1848.

/s/ Marilyn G. Moran
Marilyn G. Moran

WSACTIVELLP:11602223.3